**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RDS VENDING LLC** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 20-3928** |
| **UNION INSURANCE COMPANY and USI INSURANCE SERVICES LLC** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                             **May 13, 2021**

Plaintiff RDS Vending has brought this action against Defendants Union Insurance

Company and USI Insurance Services. Plaintiff asserts four counts. In Counts One and Two,

Plaintiff alleges that Defendant Union Insurance wrongfully denied insurance coverage for losses

occuring as a result of the COVID-19 pandemic, and in Counts Three and Four, Plaintiff alleges

that Defendant USI was negligent in obtaining insurance coverage for Plaintiff. Defendant Union

Insurance has moved to dismiss Counts One and Two against it.[1]

**I.     BACKGROUND[2]**

Plaintiff RDS Vending is Philadelphia's largest provider of vending machine, coffee

service, and pantry products and services. It provides these services to a variety of businesses,

including offices, hospitals, nursing homes, schools, airports, and prisons. Plaintiff entered into a

contract of insurance with Defendant Union Insurance for an "all-risk" policy, which insured

---

[1] USI has filed an answer to Plaintiff's Amended Complaint and has not moved to dismiss. *See* USI's Answer [Doc. No. 27].

[2] The factual allegations in Plaintiff's Amended Complaint [Doc. No. 22] are assumed true for the purposes of this motion to dismiss.

Plaintiff's Norristown, Pennsylvania warehouse. There are four policy provisions relevant to this action:

1) The business income provision, which covered Plaintiff's actual loss of business income for "direct physical loss of or damage to" the covered property;[3]

2) The civil authority provision, which covered the loss of business income if a civil authority were to prohibit access to the covered property because of damage to nearby property;[4]

3) The dependent properties provision, which covered up to $100,000 of business income losses from suspension of operations due to "direct physical loss or damage to" dependent properties;[5] and

4) The Virus Exclusion, which excluded from coverage loss or damage "caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[6]

On March 6, 2020, Pennsylvania Governor Tom Wolf signed an emergency disaster declaration triggering a public health state of emergency in the Commonwealth due to COVID-19. On March 11, 2020, the World Health Organization officially declared COVID-19 a global pandemic. On March 19, 2020, Governor Wolf issued an Order requiring all non-life sustaining businesses in the Commonwealth to cease operations and close all physical locations until further notice. Those businesses that were deemed "essential" under Governor Wolf's Order were

---

[3] Doc. No. 22-2 at 116.

[4] *Id.* at 117.

[5] *Id.* at 97. The policy defined 'dependent properties' as entities that accept Plaintiff's products or services.

[6] *Id.* at 127.

required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control."[7] Plaintiff was considered an essential business, and its warehouse remained open.

On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe and Montgomery Counties, and on April 1, 2020, he extended the Stay-at-Home Order to the entire Commonwealth. As a result, Plaintiff experienced a significant reduction in business operations and suffered a loss of business income.

On April 28, 2020, Plaintiff submitted a claim under the Policy asserting losses attributable to COVID-19 and the Stay-at-Home Orders. A month later, Union Insurance sent Plaintiff a letter, denying the claim for a lack of "direct physical loss of or damage to property that is the result of a Covered Cause of Loss" and because of the Virus Exclusion. On June 22, 2020, Plaintiff filed this action in state court, alleging that coverage was wrongly denied. Defendants timely removed the case.[8]

Defendant Union Insurance has now moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims asserted against it in the Amended Complaint. Union Insurance argues that Plaintiff is not entitled to coverage because Plaintiff has not alleged any "physical loss of or damage to" the covered property as required by the Policy and that the civil authority

---

[7] Doc. No. 22-2 at 178

[8] The removal was based on diversity jurisdiction. *See* 28 U.S.C. § 1441(a). Plaintiff is a limited liability company whose members are citizens of Pennsylvania and Florida, Defendant USI is a limited liability company whose sole member is a Delaware corporation with its principal place of business in New York, and Defendant Union Insurance is an Iowa corporation with its principal place of business in Iowa. The amount in controversy exceeds $75,000.

provision does not apply.[9] Union Insurance also argues that even if Plaintiff could establish that the Policy covers the asserted losses, the Virus Exclusion bars coverage.[10]

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[12] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[13] However, the Court "need not accept as true 'unsupported conclusions and unwarranted inferences'"[14] or "legal conclusions."[15]

## III. DISCUSSION

Under Pennsylvania law, which the parties agree governs the interpretation of the contract, the insured bears the initial burden of establishing coverage under the policy.[16] If the insured meets that burden and the insurer relies on a policy exclusion as the basis for denying

---

[9] *See* Union Ins. Co. Mot. to Dismiss [Doc. No. 26] at 1.

[10] *Id.*

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

[12] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

[13] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

[14] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[15] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (internal quotations omitted).

[16] *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citations omitted).

coverage, the burden shifts to the insurer to show that the exclusion applies.[17] The interpretation

of an insurance policy, and whether a loss triggers coverage, are questions of law.[18]

A court must read the policy as a whole and construe its meaning according to its plain

language,[19] and "give effect" to "clear and unambiguous" policy language.[20] However, a court

must also consider the "reasonable expectations of the insured,"[21] and construe ambiguous

policy language in favor of the insured.[22] But policy language may not be stretched beyond its

plain language meaning to create an ambiguity, and a disagreement between the parties over

policy language does not constitute an ambiguity.[23]

**A. Plaintiff cannot Show that it is Entitled to Coverage under the Policy**

Plaintiff argues that it is entitled to coverage under the business income provision, the

dependent property provision, and the civil authority provision.

*1. The Business Income Provision*

The "Business Income (And Extra Expense) Coverage Form" states:

> We will pay for the actual loss of Business Income you sustain due to the
> necessary "suspension" of your "operations" during the "period of restoration".

---

[17] *Id.*; *Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. Ct. 2015).

[18] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).

[19] *Spector v. Fireman's Fund Ins. Co.*, 451 F. App'x 130, 136 (3d Cir. 2011).

[20] *401 Fourth Street v. Inv. Ins. Co.*, 879 A.2d 166, 171 (Pa. 2005).

[21] *Medical Protective Co. v. Watkins*, 198 F.3d 100, 106 (3d Cir. 1999).

[22] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016). Policy language is ambiguous where it is reasonably susceptible to more than one construction. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

[23] *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163–64 (3d Cir. 2011).

The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations.[24]

At issue is whether COVID-19 caused "direct physical loss of or damage to" the covered property. This phrase is in the disjunctive, meaning there must either be "direct physical loss of" or "direct damage to" the property.[25] "Property damage is 'a distinct, demonstrable, physical alteration of the property,'" and Plaintiff cannot show that COVID-19 caused a physical alteration to the building[26]

To determine if COVID-19 caused the "direct physical loss of" the property, the Court considers the insurance policy in its entirety. For coverage to be triggered, the damage or loss must cause "the necessary 'suspension' of . . . 'operations' during the 'period of restoration,'"[27] where the "period of restoration" is the period that begins "72 hours after the time of direct physical loss or damage" and ends when the property is "repaired, rebuilt or replaced" or the business is resumed at a new permanent location.[28]

In *Port Authority of New York & New Jersey v. Affiliated FM Insurance*,[29] the Third Circuit held that "the presence of large quantities of asbestos in the air of a building is such as to

---

[24] Doc. No. 22-2 at 116. The Court may consider the Policy and Governor Wolf's Orders attached as exhibits to the Amended Complaint as they are "undisputedly authentic documents" upon which Plaintiff relies. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

[25] *See Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2034, 2021 WL 1667424, at *5 (E.D. Pa. Apr. 28, 2021).

[26] *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. 20-1869, 2020 WL 7395153, at *5 (E.D. Pa. Dec. 17, 2020) (quoting 10A *Couch on Ins.* § 148.46 (3d ed. 1995) (citations omitted)).

[27] Doc. No. 22-2 at 116.

[28] *id.* at 116, 129. Other courts in the Eastern District of Pennsylvania have considered the issue of whether COVID-19 triggers a policy covering "direct physical loss of or damage to property." The majority have found that the plaintiff cannot meet their burden of establishing coverage. *See e.g.*, *SSN Hotel Mgmt., LLC, et al. v. The Harford Mut. Ins. Co.*, No. 20-6228, 2021 WL 1339993, at *3 n.3 (E.D. Pa. Apr. 8, 2021) (collecting cases).

[29] 311 F.3d 226 (3d Cir. 2002).

make the structure uninhabitable and unusable" and would constitute "physical loss or damage" under the policy, but asbestos "not in such form or quantity as to make the building unusable" would not.[30]

The Third Circuit extended the principles of *Port Authority* in the nonprecedential, but persuasive decision in, *Motorists Mutual Insurance v. Hardinger*.[31] In *Motorists Mutual*, the plaintiffs sought coverage under a homeowner's policy, asserting that there was a "physical loss to the property" because of e-coli contamination. Citing *Port Authority*, the Third Circuit held that summary judgment was inappropriate because there was a "genuine issue of fact whether the functionality of the Hardingers' property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable."[32]

Under Third Circuit precedent, a "physical loss of" a building may be caused by something "unnoticeable to the naked eye" that does not necessarily affect the physical structure of the building, but only where the property's "function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable."[33] Additionally, to give meaning to the "period of restoration" clause, the cause of the loss must be directly associated with the building such that it could be remedied through repair or by moving to a different building.

Plaintiff cannot show "direct physical loss of" its building due to COVID-19. Even if Plaintiff did suffer loss of use of the building, it was because of the presence of COVID-19 in the

---

[30] *Id.* at 236.

[31] 131 F. App'x 823, 825 (3d Cir. 2005).

[32] *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826–27 (3d Cir. 2005).

[33] *Port Auth.*, 311 F.3d at 235–36.

community and not from the coronavirus existing within with the building.[34] More importantly,

Plaintiff cannot show that the covered property was made useless or uninhabitable because

Plaintiff was considered an essential business.[35] Plaintiff was able to continue to use its building,

while following appropriate social-distancing and other mitigation measures.[36]

### 2. The Civil Authority Provision

The "Civil Authority" provision states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.[37]

---

[34] Plaintiff alleges that the coronavirus can "physically infect and remain on surfaces of objects or materials." Am. Compl. [Doc. No. 22] ¶ 65. But the virus does not remain active beyond a limited period (and surfaces can be easily disinfected), and Plaintiff acknowledges that risk of transmission within the building stems from respiratory droplets from people inside the building, not from any condition of the building itself. *Id.* ¶ 122.

[35] *See Id.* ¶ 121. Other courts considering insurance policies with similar language have reached the same conclusion. *See Lansdale 329 Prop., LLC v. Hartford Underwriters Ins. Co.*, No. 20-2034, 2021 WL 1667424, at *6 (E.D. Pa. Apr. 28, 2021) (collecting cases) ("Numerous decisions from within this Circuit are instructive on whether the threat of COVID-19 constitutes 'direct physical loss or direct physical damage to property.' These decisions have uniformly concluded that such a threat does not trigger insurance coverage.").

[36] *See* Doc. No. 22-2 at 178.

[37] Doc. No. 22-2 at 117.

Plaintiff argues that Governor Wolf's Stay-at-Home Order triggered this provision.[38] But the Civil Authority provision requires that access to the covered property be prohibited. Because Plaintiff was considered a "life-sustaining" business under the Stay-at-Home Order, its warehouse remained open.[39] Additionally, the civil authority provision requires a nearby property to be damaged, and that the action by the civil authority be as "a result of the damage." Governor Wolf's Stay-at-Home Order was due to the general existence of COVID-19 throughout Pennsylvania, and not because of some "damage" to a particular property.[40]

### 3. The Dependent Properties Provision

The dependent properties provision covers business income losses, of up to $100,000, caused by "direct physical loss of or damage to 'dependent property,'" which is defined as a "property operated by others" that accept Plaintiff's "products or services."[41] As discussed above, Plaintiff cannot show that COVID-19 caused "direct physical loss of or damage to" any dependent properties.

### B. Plaintiff's Insurance Claims are Barred by the Virus Exclusion

Even if Plaintiff could allege facts showing that it was entitled to coverage under the insurance policy, coverage would still be barred under the Virus Exclusion. Exclusions are

---

[38] *See* Am. Compl. [Doc. No. 22] ¶¶ 79–90.

[39] *Id.* ¶ 121; *see also* Doc. No. 22-2 at 178.

[40] Other courts considering similar civil authority coverage have come to the same conclusion. *See e.g., TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. 20-3863, 2021 WL 131555, at *7 (E.D. Pa. Jan. 14, 2021) ("[W]e disagree that the orders were issued in response to a 'dangerous physical condition" of the property. The civil authorities issued their orders to address the health crisis, not some 'direct physical loss' as required by TAQ's policy"); *see also Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, No. 20-5271, 2021 WL 1210000, at *5 n.24 (E.D. Pa. Mar. 31, 2021) (collecting cases).

[41] Doc. No. 22-2 at 97.

strictly construed against the insurer,[42] but "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import."[43]

The "Exclusion of Loss due to Virus or Bacteria" states: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[44] The Virus Exclusion also states that it "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to . . . forms or endorsements that cover business income, . . . or action of civil authority."[45]

The exclusion is comprehensively worded. Under its unambiguous language, the policy does not cover losses or damage caused by SARS-CoV-2, the novel coronavirus that causes COVID-19. Because all of Plaintiff's claims for coverage are due to COVID-19, this exclusion is fatal to Plaintiff's claims.[46]

Plaintiff argues that the Virus Exclusion should be not be enforced because of regulatory estoppel. Plaintiff contends that when insurance industry trade groups were seeking approval from state regulators for the adoption of the Virus Exclusion, they took the position that

---

[42] *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

[43] *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 761 (3d Cir. 1985).

[44] Doc. No. 22-2 at 127.

[45] *Id.*

[46] Other courts, considering a similar exclusion in COVID-19 insurance cases, have reached this same conclusion. *See Lansdale 329 Prop.*, 2021 WL 1667424, at *10 (collecting cases) ("Numerous courts, applying Pennsylvania law, have thoroughly addressed arguments regarding the Virus Exclusion's applicability to insurance claims based on COVID-19 shutdowns. These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage.").

"[p]roperty policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents."[47] Plaintiff argues that trade groups claimed that the Virus Exclusion only served to "clarify" coverage and not to narrow it, and therefore, Defendant cannot rely on the exclusion to preclude coverage.[48]

To show regulatory estoppel, a plaintiff must show that "(1) a party made a statement to a regulatory agency; and (2) afterward, the party took a position opposite to the one presented to the regulatory agency."[49] Plaintiff has shown that insurance trade groups made statements to state regulators, but even if these statements could be imputed to Union Insurance, Plaintiff has not alleged that Defendant has taken a contrary position. Indeed, Union Insurance argues that, in addition to being barred by the exclusion, the policy does not cover COVID-19 related business interruptions. Regulatory estoppel does not apply.[50]

## IV. CONCLUSION

The Court is sympathetic to Plaintiff and other similarly situated business that were affected by the COVID-19 Pandemic. But the Court must reach the result that is consistent with the language of the policy and the applicable jurisprudence. Plaintiff cannot show that they were entitled to coverage for COVID-19 related business interruptions. Counts One and Two of

---

[47] Am. Compl. [Doc. No. 22] ¶ 106.

[48] Doc. No. 28-1 at 17.

[49] *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008).

[50] Other courts in the Eastern District of Pennsylvania have rejected similar regulatory estoppel arguments. *See, e.g., Moody v. Hartford Fin. Grp., Inc.*, No. 20-2856, 2021 WL 135897, at *11 (E.D. Pa. Jan. 14, 2021) (collecting cases).

Plaintiff's Amended Complaint will be dismissed with prejudice, as any amendment would be futile.[51] Union Insurance will be removed as a defendant. An order will be entered.

---

[51] *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).